IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**STEVEN EDWARD RIDDLE, #1005578**                                                              **PLAINTIFF**

**vs.**                                                                                    **CAUSE NO. 3:13cv328-FKB**

**BRYAN BAILEY, BEN BLAINE, MITCHELL HALL,**
**DENISE CRAIG, KATIE MINOR, LAVERN COLLUM, AND**
**DR. MICHAEL REDDIX**                                                                      **DEFENDANTS**
_____

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT FILED BY BAILEY, BLAINE, HALL & CRAIG**
_____

**NOW COME,** Defendants, Sheriff Bryan Bailey, Ben Blaine, Mitchell Hall and Denise Craig, by and through counsel, and in support of their and in support of its Motion for Summary Judgment, state as follows:

I.      **INTRODUCTION**

Sheriff Bailey, Lieutenant Blaine, Officer Hall and Officer Craig have all been sued in their individual capacities only, and submit that pursuant to FED. R. CIV. P. 56, the record before this Court does not create any genuine issue of material fact sufficient to preclude the entry of judgment in these Defendants' favor, as a matter of law.  Because the Plaintiff herein, Steven E. Riddle, cannot establish a *prima facie* case of liability against Sheriff Bailey, Lieutenant Blaine, Officer Hall and/or Officer Craig as alleged, dismissal with prejudice is thereby appropriate in these Defendants' favor.

Because Plaintiff has filed separate claims against these individuals, Sheriff Bailey, Lieutenant Blaine, Officer Hall and Officer Craig respectfully request that this Court make a separate ruling as to qualified immunity and liability as to each separate Defendant.

II. **STATEMENT OF FACTS**

Plaintiff, Steven Riddle, *pro se*, filed suit on May 20, 2013, under the provisions of the Prison Litigation Reform Act ("PLRA") and the procedural vehicle of 42 U.S.C. § 1983. Plaintiff has alleged that Officer Craig refused to allow him to have an initial phone call, that Officer Hall used excessive force in placing Plaintiff in a booking cell, and that Sheriff Bailey and Lt. Blaine are liable due to their positions over the Rankin County Jail.

Plaintiff was arrested by the Pearl Police Department booked in at the Rankin County Jail on December 23, 2012. *Inmate Records* (Exhibit D), at RC0023. During the process of being booked in, Plaintiff and Officer Mitchell Hall had a disagreement with regards to Plaintiff refusing to provide an emergency contact number. *Id.* at RC0038; *Affidavit of Craig* (Exhibit F); *Omnibus Hearing ("OH") Transcript* (Exhibit C); pg. 9. After refusing to provide any emergency contact number to jail officers, Plaintiff then immediately asked to make a phone call. *Inmate Records* at RC0038; *Affidavit of Craig*. Officer Hall questioned why Plaintiff could not provide as an emergency contact and yet still make a call, and a verbal dispute then arose between Riddle and Officer Hall. *Id.* In an attempt to resolve the situation, Officer Denise Hall, who had been sitting in the booking department and who overheard the disagreement, attempted to talk to Riddle about the situation. *Id.* Riddle responded to Officer Craig by stating, "fuck you." *Id.* At this point in time, Officer Hall ended the booking procedure and escorted Plaintiff to a male detox cell in order for Riddle to calm down. *Id.* The entire time Plaintiff was escorted to the holding cell, he was continually cursing at Officer Craig. *Id.* Plaintiff does not allege that he was injured while being escorted to the holding cell. *OH Transcript* at pg. 10 ("He got up and grabbed me by the shoulder, took me to the holding cell, which was no problem.").

Riddle initially refused to go in the holding cell, and Officer Hall had to push him inside, which Plaintiff again testified was no problem. *Inmate Records* at RC0038; *Affidavit of Craig*; *OH Transcript* at pg. 10 ("He opened the door and he put me in the holding cell. There was no problem with that . . . ."). After being placed in the holding cell and as Officer Hall was attempting to close the cell door, Riddle then turned around and aggressively approached Officer Hall, screaming the entire time. *Inmate Records* at RC0038; *Affidavit of Craig*. Officer Hall then pushed Plaintiff inside of the cell, stepped outside and closed the door. *Id.* Plaintiff's testified at the Omnibus Hearing to the following version of this occurrence:

> When he put my (sic) in the holding cell, I thought he was going to shut the door. I turned around and I said, "Look, Mr. Hall -- or I just said, "Look, officer, I have a right to a phonecall. You are wrong for not giving me my phonecall." I said, "I'm going to tell the sheriff, get a lawyer if I can and sue y'all." He got mad. I think he was mad over the not being able to give an emergency contact number. They were both pretty mad at me thinking I was being disobedient and disrespectful and not following orders.
>
> And he grabbed me by the chest and shoved me pretty hard to where I went all the way across the holding cell. And there is a metal bench about 2 feet high that you sit on. My feet came out from under me when I got shoved backwards, and I landed right on my mid back or lower back on the edge of that metal bench.

*OH Transcript* at pg. 12.

After this incident and once Plaintiff calmed down, the booking procedure concluded and Plaintiff had an initial health assessment on December 23, 2012. *Medical Records* (Exhibit E), at RC0113-0114. From January of 2013 through Plaintiff's release from the Rankin County Jail in August of 2013, Plaintiff was seen on a regular basis by health care personnel. *See Medical Records*. From the date Plaintiff was booked in at the Rankin County Jail on December 23, 2012, through May 8, 2013, Rankin County had a

contract with Health Assurance, LLC to provide medical services at the Rankin County Jail, which to the best of these Defendants' knowledge, were provided as listed in the medical records. *Health Services Agreement* (Exhibit I).

### III. LEGAL PRECEDENT & ANALYSIS

#### a. Summary Judgment Standard of Review.

Rule 56 of the *Federal Rules of Civil Procedure* authorizes the granting of summary judgment in favor of the moving party when it is demonstrated that there exists no genuine issue of *material* fact precluding the granting of judgment in the movant's favor. FED. R. CIV. P. 56. When presented with a summary judgment motion, the Court's burden is to "examine each issue in the light most favorable to the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In the Court's review, however, it "must distinguish between evidence of disputed facts and disputed matters of professional judgment," the latter of which affords "deference to the views of prison authorities." *Beard v. Banks*, 548 U.S. 521, 530, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006). Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage. The moving party must demonstrate that summary judgment is justified; the non-moving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

If the moving party is able to make out a *prima facie* showing as to the absence of a genuine issue of a material fact, the opposing party cannot rest on the allegations of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e). The party opposing summary judgment must produce significant evidence

4

and specific facts tending to support his position. *American Mfrs. Mut. Ins. Co. v. Cupstid*, 673 F. Supp. 186, 188 (S.D. Miss. 1987). As the United States Supreme Court explained in *Celotex Corp.*, *supra*:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

In *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*), the Fifth Circuit emphasized that "summary judgment should be granted and will be affirmed by this court when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Id.* at 1071. Addressing the non-movant's burden to rebut a *prima facie* showing for summary judgment by the moving party, the *Little* court held,

> This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356, by "conclusory allegations," *Lujan*, 497 U.S. at 871-73, 110 S. Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by only a "scintilla" of evidence. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

*See Little*, 37 F.3d at 1075.

      b.      **<u>Plaintiff's failure to exhaust his administrative remedies</u>**.

Pursuant to the provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Hemphill v. Inglese*, 359 Fed. Appx. 537, 539 (5th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)). The PLRA exhaustion requirement is meant to "'give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court' and to allow for claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court." *Bisby v. Garza*, 342 Fed. Appx. 969, 971 (5th Cir. 2009) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992)).

In cases where the PLRA is applicable, "exhaustion is mandatory." *Hemphill*, 359 Fed. App'x. at 539 (citing *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)); *see also Lane v. Doe*, 2010 WL 4272680, at *1 (5th Cir. Oct. 29, 2010) (citing *Woodford*, 548 U.S. at 89-95) ("Proper exhaustion is required. . . ."). "This requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" *Coleman v. Sweetin*, No. 12-40012, 2014 WL 958275 (5th Cir. Mar. 12, 2014) (quoting *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002)). Exhaustion is an affirmative defense, however, and it is "error to dismiss a prisoner's complaint for want of exhaustion before a responsive pleading is filed unless the

failure to exhaust is clear from the face of the complaint." *Id.* (citing *Carbe*, 492 F.3d at 328).

In order for a prisoner plaintiff to properly exhaust his or her administrative remedies, he or she must "not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Bisby*, 342 Fed. Appx. at 971 (citing *Woodford*, 548 U.S. at 89-93). "A prisoner cannot satisfy the exhaustion requirement 'by filing an untimely or otherwise procedurally defective administrative grievance or appeal.'" *Id.* (quoting *Woodford*, 548 U.S. at 83-84).

In the case of *Johnson v. Ford*, 261 Fed. Appx. 752 (5th Cir. 2008), the Fifth Circuit Court of Appeals held that it takes "'a strict approach' . . . to the exhaustion requirement. *Johnson v. Ford*, 261 Fed. Appx. at 755 (quoting *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)). In *Johnson*, the plaintiff was required to follow Texas' two-step grievance procedure, including filing a formal grievance within 15 days of the alleged incident, in order to exhaust his administrative remedies. *Id.* The plaintiff argued that he substantially complied with the grievance procedure by making informal grievance requests and other attempts to utilize the two-step grievance procedure. *Id.* at 756. In reversing the district court's denial of summary judgment filed by the *Johnson* defendants and rendering judgment in favor of the defendants, the Fifth Circuit found the "exhaustion requirement requires 'proper exhaustion,'" and that Johnson "has no excuse for failing to exhaust his administrative remedies." *Id*. (citing *Woodford*, 126 S. Ct. at 2385, 2387; *Days*, 322 F.3d at 866).

The grievance procedure at the Rankin County Detention Facility is attached to Defendant's Motion for Summary Judgment as Exhibit G. The grievance procedure

7

specifically provides for the form of filing a grievance with the Rankin County Jail, the response that is to be provided by the Jail Commander, and the appeal(s) of any decision of the Jail Commander.  Plaintiff testified that he was aware of the grievance procedure at the Rankin County Jail (*see OH Transcript*, pg. 16), yet filed suit on May 20, 2013, prior to the hearing on his grievance on June 5, 2013.  *Grievance Hearing* (Exhibit H).

The Grievance Hearing was held in accordance with the grievance procedure, and was a necessary step in the grievance procedure, yet not even the last step.  Pursuant to the provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *Hemphill*, 359 Fed. Appx. at 539 (quoting 42 U.S.C. § 1997e(a)).  Because Plaintiff did not wait until after he exhausted the available grievance procedure at the Rankin County Jail, his Complaint should be dismissed pursuant to the PLRA.

    c. **<u>Defendants are entitled to qualified immunity</u>.**

Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id*.  (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It is "an entitlement not to stand trial or face the other burdens of litigation."  *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The

8

defense of qualified immunity protects defendants not only from liability, but also from suit, in certain circumstances. *Id*. When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hampton v. Oktibbeha Cnty. Sheriff Dep't,* 480 F.3d 358, 363 (5th Cir. 2007).

To assess qualified immunity, a court must determine whether the plaintiff has alleged a violation of a constitutional right. If so, the court must decide if the conduct of the government official was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir.2000). This means that "[even law enforcement officials who 'reasonably but mistakenly [commit a constitutional violation]' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). It is within the Court's discretion to decide which prong of the qualified immunity analysis to address first. *Pearson v. Callahan,* 129 S. Ct. 808, 818 (2009)).

"Objective reasonableness" is a matter of law for the court to decide. The question is whether the actions of the Defendants conformed to constitutional standards in light of the information available to them and the law at the time. Once a defendant has raised a qualified immunity defense, the Plaintiff bears the burden of overcoming the qualified immunity defense, and must do so by establishing specific facts which demonstrate that pursuant to the law as it existed at the time, the Defendants' actions were clearly prohibited. *Anderson v. Pasadena Independent School District.*, 184 F. 3d 439, 443 (5th Cir. 1999). "To do so, the plaintiff must show that the official knew or reasonably should have

known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Jolly v. Klein*, 923 F. Supp. 931, 946 (S.D. Tex. 1996) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S. Ct. 2727, 2737, 73 L. Ed. 2d 396 (1982)). Qualified immunity creates a presumption in favor of immunity for public officials. *Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990).

i. No Supervisory Liability

A supervisor can only be found individually liable under 42 U.S.C. § 1983 on the basis of his or her own personal participation in the wrongful conduct, or in cases involving a supervisor, where there is a causal connection between the supervisor's acts and the alleged constitutional violation. *Gilmer v. Trowbridge*, 2009 WL 649692 (S.D. Miss. Mar. 10, 2009) (citing *Hinshaw v. Doffer*, 785 F.3d 1260, 1263 (5th Cir. 1986). Defendants herein cannot be held vicariously liable under § 1983 for the acts of his subordinates because, in a § 1983 case, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." E*state of Allison v. Wansley*, 2013 WL 1983959, at *6 (5th Cir. May 15, 2013) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987)). "For liability to exist 'under § 1983 there must be some connection between the [supervising officer's] action and the alleged constitutional violation.'" *Gilmer* (quoting *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996); citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)). Based on the foregoing and to the extent that Plaintiff's claims against Sheriff Bailey and Lt. Blaine can reasonably be deemed to be nothing more than attempt to circumvent this prohibition against supervisory liability, Plaintiff's claims against these Defendants should be dismissed with prejudice.

ii.     Excessive Force Claim

"The analysis for an excessive force claim is the same whether it is brought by a pretrial detainee or a convicted inmate." *Whiddon v. Martin*, No. 2:09cv100-MTP, 2010 WL 3522032, at *2 (S.D. Miss. Sept. 1, 2010) (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1446-47 (5th Cir. 1990); *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993); *Watts v. Smart*, 328 Fed. Appx. 291, 293 (5th Cir. 2009); *Haddix v. Kerss*, 203 Fed. Appx. 551, 554 (5th Cir. 2006)). Under the Fourteenth Amendment, the analysis is "whether the force applied was 'in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" *Watts v. Smart*, 328 Fed. Appx. 291 (5th Cir. 2009) (citing *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.1993); *Hudson v. McMillian,* 503 U.S. 1, 5 (1992)). "To act 'maliciously' means to intentionally do a wrongful act without just cause or excuse, with an intent to inflict injury or under circumstances that show an evil intent." *Hoda v. Emmil*, No. 1:09cv772–LG–RHW, 2011 WL 3683295 (S.D. Miss. Jul. 29, 2011).

The Fifth Circuit Court of Appeals has used several factors to determine if a prisoner's constitutional rights have been violated by the unnecessary or wanton infliction of pain, which include:

(1)     The extent of the injuries suffered;
(2)     The need for the application of force;
(3)     The relationship between the need and the amount of force used;
(4)     The threat reasonably perceived by the responsible official; and
(5)     Any efforts made to temper the severity of a forceful response.

*Hudson v. McMillian*, 962 F. 2d 522, 523 (5th Cir. 1992); *see also Whitley v. Albers*, 106 S. Ct. 1078, 1085 (1986).

11

According to the United States Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), the Court must pay particular attention to the officer's actions in light of or in response to the detainee's action, as "[a]n officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense. *Saucier*, 533 U.S. at 205. "Qualified immunity operates . . . to protect officers from the sometimes 'hazy border between excessive and acceptable force,' *Priester v. Riviera Beach*, 208 F.3d 919, 926-927 (11th Cir. 2000), and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* at 206.

The record in this case makes it clear that Officer Hall did not violate the Plaintiff's constitutional rights. Plaintiff has not claimed that any force was excessive, until Plaintiff approached Officer Hall and this Defendant pushed Plaintiff backwards. The Court should consider the facts leading up to the use of force in analyzing the claim of excessive force against Officer Hall. Plaintiff admitted at the Omnibus Hearing that he called the officers names. *See OH Transcript*, pg. 10 ("And names were called and I was called more names. . . .") Plaintiff actually told a female officer, Denise Craig, "fuck you" and continued calling her names all while being led by Officer Hall to the holding cell. Plaintiff was already deemed to be a threat at that time, which is why Riddle was being placed in the holding cell and the booking procedure was postponed until Plaintiff calmed down. The facts at that point appear uncontested – (a) Plaintiff was placed in the holding cell without incident, (b) Officer Hall was attempting to close the door of the holding cell, (c) Riddle initiated further confrontation with Officer Hall by approaching this officer and screaming at him, and (d)

12

Officer Hall pushed Riddle back into the holding cell, causing him to fall backwards on a metal bench. Plaintiff was not in handcuffs during this incident and no punches, kicks, or slaps were thrown. The officer merely pushed Plaintiff back into the holding cell so that the door could be closed. These facts, as admitted by Plaintiff, do not amount to excessive force in light of the facts presented and what a reasonable officer would have done under the same or similar circumstances. For these reasons, Officer Hall is entitled to qualified immunity.

### iii. Plaintiff's failure to receive a phone call and being called a liar

Plaintiff's allegations against Officer Denise Craig is that this officer called Plaintiff a liar and would not let him initially make a telephone call. *See OH Transcript*, pgs. 19-20. These allegations do not amount to a constitutional violation, and accordingly, Plaintiff's claims against Officer Craig should be dismissed with prejudice. *See Jones v. Heorns*, No. 4:11cv46-CWR-FKB, 2011 WL 5446303 (S.D. Miss. Nov. 9, 2011) (citing *King v. Sims*, No. 2:07cv136–MTP, 2009 WL 2497154, at * 5 (S.D. Miss. Aug. 14, 2009) ("[L]oss of . . . phone and visitation privileges did not constitute a violation of plaintiff's constitutional rights."); *Frechou v. Allison*, No. 1:08cv1396-RHW, 2010 WL 578493, at *4 (S.D. Miss. Feb. 11, 2010) (quoting *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983), *cert. denied*, 464 U.S. 998, 104 S. Ct. 499, 78 L. Ed. 2d 691 (1983); *Coyle v. Hughs*, 436 F. Supp. 591, 593 (W.D. Okla. 1977)) ("[A]s a rule, 'mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'").

### iv. Medical Deprivation

In order for a plaintiff to establish liability under 42 U.S.C. § 1983 for lack of medical care, he must prove that the defendants acted with deliberate indifference towards his

13

serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 291, 50 L. Ed. 2d. 251 (1976). To support the allegations of a constitutional violation for denial of medical attention, a plaintiff must show that the individual defendants knew of a substantial risk of serious harm and that they "acted or failed to act with deliberate indifference to the [Plaintiff's] needs." *Hare v. City of Corinth*, 135 F.3d. 320, 326 (5th Cir. 1998) (citing *Hare v. City of Corinth*, 74 F. 3d. 633, 647-48 (5th Cir. 1996)). "Unsuccessful medical treatment does not give rise to a § 1983 cause of action. Nor does '[m]ere negligence, neglect or medical malpractice.'" *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Disagreement with medical treatment alone cannot support a claim under § 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). To this end, where one pain medication is provided place of another pain medication, a constitutional violation will not exist under the Fourteenth Amendment. *see Burton v. Owens*, 2013 WL 586825 (5th Cir. Feb. 14, 2013). "A delay in treatment is a constitutional violation only where 'there has been deliberate indifference [that] results in substantial harm.'" *Flores v. Jaramillo*, 389 Fed. App'x. 393, 395 (5th Cir. 2010) (quoting *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)).

Plaintiff alleges that he wrote Lt. Blaine grievances related Riddle's perceived lack of medical attention, and that he wrote Sheriff Bailey a grievance in March of 2012 related to same. Any allegation based solely on these Defendants' response to the alleged grievance does not amount to a constitutional violation. *See Lewis v. Casey, 518 U.S. 343* (1996) (There is no requirement that Defendants "enable [a] prisoner to discover grievances, and to litigate effectively"); *Davis v. Kelly*, No. 2:10cv271–KS–MTP, 2012 WL 3544845 (S.D. Miss. Aug. 16, 2012) (("Further, there is no constitutional right to a grievance procedure

14

and no liberty interest right to having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374–75 (5th Cir. 2005); *Jones v. Shabazz*, No. H–06–1119, 2007 WL 2873042 at 21 (E.D. Tex. Sept. 28, 2007); *McGowan v. Peel*, No. 3:06cv659–DPJ–JCS, 2007 WL 710154 at 1–2 (S.D. Miss. March 6, 2007); *Hernandez v. Estelle*, 488 F.2d 1154, 1158 (5th Cir. 1986) (holding that actual failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation).").

Assuming *arguendo* that Plaintiff did write Sheriff Bailey and Lt. Blaine letters related to his medical treatment, it is uncontested that Plaintiff was being seen by medical professionals, and been seen by medical professionals since the date of his booking on December 23, 2012. Neither Sheriff Bailey nor Lt. Blaine are medical trained, which is why Rankin County had a contract with Health Assurance, LLC to provide medical services. These Defendants reasonably believe that all medical services provided by Health Assurance were appropriately done, and any and all further testing or outside consultations ordered by the medical professionals with Health Assurance were performed. For these reasons, Sheriff Bailey and Lt. Blaine cannot be liable for being deliberately indifferent to Riddle's serious medical needs, and all claims against them should be dismissed with prejudice.

v. <u>Access to Court</u>

Although not alleged in any pleading, Plaintiff also generally alleged an access to court claim at the Omnibus Hearing. Such claim is in relation to the instant litigation, and it is clear through the massive amount of pleadings that Plaintiff has filed that he has in no way been denied access to this Court.

15

## IV. CONCLUSION

For the above-mentioned reasons, Defendants, Sheriff Bryan Bailey, Ben Blaine, Mitchell Hall and Denise Craig are entitled to judgment as a matter of law as to all of Plaintiff's claims asserted against them in this civil action.

**RESPECTFULLY SUBMITTED,** this 1st day of April, 2014.

                                                    **SHERIFF BRYAN BAILEY, LT. BEN BLAINE, DEPUTY MITCHELL HALL AND DEPUTY DENISE CRAIG – DEFENDANTS**

                                                  **BY:**    */s/ Jason E. Dare*
                                                               **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
Post Office Box 16089
Jackson, Mississippi  39236-6089
Telephone:   (601) 987-5300
Facsimile:     (601) 987-5353

## **CERTIFICATE OF SERVICE**

I, JASON E. DARE, hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Walter T. Johnson, Esq. (wjohnson@watkinseager.com)
Robert H. Pedersen (bpedersen@watkinseager.com)
WATKINS & EAGER PLLC
P.O. Box 650
Jackson, Mississippi 39205

I further certify that I have this day mailed, via U.S. Mail, postage pre-paid, a true and correct copy of the above and foregoing document to the following non-ECF participant(s):

Steven Edward Riddle, #47107
M.S.P.
PO Box 10
Unit 29-D, A-Zone, Bed 28
Parchman, Mississippi  38738

**THIS,** the 1st day of April, 2014.

                                             _/s/ Jason E. Dare_
                                             **JASON E. DARE**